## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## SOUTHERN DIVISION

| | |
|---|---|
| STEPHANIE FOSTER, individually and on behalf of all others similarly situated,<br><br>                             Plaintiff,<br><br>   v.<br><br>KIMBERLY-CLARK CORPORATION, a Delaware corporation,<br><br>                            Defendant. | Case No.: _____<br><br><br>**CLASS ACTION COMPLAINT**<br><br><br>**Jury Trial Demanded** |

Plaintiff Stephanie Foster ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint and Demand for Jury Trial against defendant Kimberly-Clark Corporation ("Defendant"). Plaintiff alleges the following upon personal knowledge, investigation of counsel, and information and belief.

## NATURE OF THE ACTION

1.      Defendant Kimberly-Clark is one of the largest manufacturers of tampons in the United States.

2.      According to Statista, the North American tampon market generated revenue of $1.98 billion in 2023 and is expected to experience compound annual growth of 5.8% per year from 2024 to 2030.

3.      Defendant markets and labels its U by KOTEX Click® tampons (the "Products")[1]

---

[1] This action includes in the definition of "Products" all sizes and configurations of U by KOTEX Click® compact tampons sold during the Class Period (defined below), including but not limited to: Regular, Super, and Super Plus tampons. All sizes of the Products have identical label Representations (as defined herein) and contain the same ingredients.

to maximize brand sales.

4.      On the Product labels, Defendant prominently states that the Products are/contain:

(i)  "no harsh ingredients";

(ii)  "elemental chlorine-free rayon";

(iii) "pesticide free";

(iv) "made without fragrance";

(v)  "gynecologist tested"; and

(vi)  "BPA free"

(collectively, the "Representations").

5.      The label Representations are likely to lead reasonable consumers to believe that the Products are free from potentially harmful elements and ingredients.

6.      The label Representations are misleading based on the lead contained in the Products, which is not disclosed anywhere on the labels.

7.      According to independent scientific testing commissioned by Plaintiff's counsel, every size and configuration of Defendant's Products contains a substantial amount of lead.

8.      Consumers, including Plaintiff, do not want to purchase tampons containing lead.

9.      Consumers have no reason to know that the Products contain lead.

10.      There are other menstrual options available to consumers, including organic tampons, that do not contain lead.

11.      In order to drive its own profits, however, Defendant misleads consumers about the nature of the Products and deprives consumers of the opportunity to make an informed choice between its Products, which contain lead, and other available menstrual products, which do not.

12.      Plaintiff and Class members have suffered economic injury based on their purchase

of the Products, which they would not have bought had they known the truth.

13. Plaintiff brings this action individually and on behalf of those similarly situated and seeks to represent an Illinois Subclass, a Multi-State Consumer Protection Class, and a Nationwide Class (excluding California). Plaintiff seeks damages, interest thereon, reasonable attorneys' fees and costs, restitution, other equitable relief, and disgorgement of all benefits Defendant has enjoyed from its unlawful, misleading and deceptive conduct, as detailed herein. In addition, Plaintiff seeks injunctive relief to stop Defendant's unlawful practices in the manufacture and/or labeling of the Products. Plaintiff makes these allegations based on her personal knowledge as to herself and her own acts and observations and, otherwise, on information and belief based on investigation of counsel.

## PARTIES

14. Plaintiff Stephanie Foster resided within this district in Chicago, Illinois during the Class Period (defined below) prior to the filing of this Action.

15. Plaintiff purchased the Products multiple times from stores located in Chicago, Illinois during the Class Period.

16. Defendant Kimberly-Clark Corporation is a Delaware corporation with its principal place of business in Irving, Texas.

17. Defendant manufactures, sells and distributes the Products and is responsible for the advertising, marketing and labeling of the Products.

18. Defendant and its agents promoted, marketed, and sold the Products at issue in this jurisdiction and in this judicial district. The unfair, unlawful, deceptive, and misleading advertising and labeling of the Products was prepared and/or approved by Defendant and its agents, and was

disseminated by Defendant and its agents through labeling and advertising containing the misrepresentations alleged herein.

## JURISDICTION AND VENUE

19.     This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (1) there are 100 or more putative Class Members, (ii) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and (iii) there is minimal diversity because Plaintiff and Defendant are citizens of different states. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

20.     This Court has personal jurisdiction over Defendant because Defendant has substantial aggregate contacts with this District.

21.     Defendant has engaged in conduct in this District that has a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons throughout the United States, including because Defendant placed the Products into the stream of commerce directed at this District, and because Defendant purposely availed itself of the laws of the United States and the State of Illinois.

22.     In accordance with 28 U.S.C. §§ 1391(a) and (b), venue is proper in this District because a substantial part of the conduct giving rise to Plaintiff's claims occurred while she resided in this judicial district. Venue is also proper under 18 U.S.C. § 1965(a) because Defendant transacts substantial business in this District.

## COMMON FACTUAL ALLEGATIONS

### A.  Reasonable Consumers Are Likely to be Misled by Defendant's Label Representations

23.     KOTEX tampons are a trusted, premium brand and a household name.

24.     Defendant manufactures, labels, markets, promotes, advertises, and sells the Products.

25.     The following are examples of the box label images of the Products:






26.     Defendant uniformly and prominently makes the following Representations on the Product labels:

   (i)  "no harsh ingredients";

   (ii)  "elemental chlorine-free rayon";

   (iii) "pesticide free";

   (iv) "made without fragrance";

   (v)  "gynecologist tested"; and

   (vi) "BPA free"

27.     The Representations lead reasonable consumers to believe that the Products are free from potentially harmful ingredients or elements (such as lead).

28.     The Representations are misleading based on the lead contained in the Products, which Defendant fails to disclose.

29.     The Representations are optional advertising statements.

30.     The Representations are not required or governed by any federal or FDA guidance or regulation.

31.     Defendant voluntarily makes the Representations on the labels of the Products to appeal to consumers and to increase sales of the Products.

32.     Defendant intentionally makes the label Representations but fails to disclose the lead in the Products.

33.     The disclosure of lead in the Products would negatively impact Defendant's sales of the Products and its bottom line.

34.     If consumers knew that the Products contain lead, particularly in the amounts set forth herein, they would not purchase the Products.

35.     There are other menstrual products available to consumers besides Defendant's Products that do not contain lead.

36.     Consumers, however, are deprived of making the informed choice between the Products, which contain lead, and other menstrual products, which do not, because Defendant fails to disclose the material fact that the Products contain lead.

37.     Plaintiff and reasonable consumers suffered economic injury based on the purchase price of the Products.

38.     If Plaintiff had known the truth about Defendant's Products, she would not have purchased the Products.

39.     Plaintiff and Class members were harmed based on money spent to purchase the Products, which they otherwise would not have spent if they had known that the Products contain lead.

**B.  <u>Scientific Testing Demonstrates that Defendant's Products Contain a Substantial Amount of Lead</u>**

40.     Plaintiff's counsel commissioned scientific testing of Defendant's Products by an independent laboratory, which holds numerous accreditations, including ISO/IEC 17025:2017 and the FDA Laboratory Accreditation for Analysis of Foods (LAAF).

41.     In July of 2024 and February of 2025, the laboratory conducted testing of U by KOTEX Click® Regular tampons and U by KOTEX Click® Super and Super Plus tampons.

42.     The laboratory conducted testing on homogenous samples of each size of Defendant's Products (e.g., testing was conducted on a homogenous sample of each of Defendant's regular, super, and super plus size tampons).

43.     The testing was conducted using Inductively Coupled Plasma – Mass Spectrometry ("ICP-MS").

44.    ICP-MS is used to test for the presence of heavy metals, and the amount thereof.

45.    ICP-MS is recognized for its high precision and sensitivity in measuring heavy metals, including lead.

46.    The scientific testing described in the Environmental International article, which tested tampons for heavy metals (cited below), used ICP-MS to determine the concentrations of heavy metals in the tested tampons.

47.    In addition, ICP-MS is the approved methodology used by the FDA to test for the presence of heavy metals in food.[2]

48.    The results of the scientific testing demonstrate that all of Defendant's Products, regardless of size, contain a substantial amount of lead.

49.    In addition to the Products, Plaintiff's counsel also commissioned the independent, scientific testing of numerous other brands of tampons.

50.    Using the same testing methodology, the same FDA-accredited laboratory tested numerous organic tampons, including Tampax Pure Cotton tampons and L. brand tampons.

51.    In sharp contrast to the Product testing results—which found substantial amounts of lead in each tested Product—the testing of the organic tampons demonstrates that the organic tampons do not contain detectible levels of lead (with the limit of detection set at 0.001).

***Consumers Use Multiple Tampons Per Day***

52.    The Product labels specify that a single tampon should be used "FOR 8 HOURS MAXIMUM".

---

[2] *See e.g.* https://www.fda.gov/food/environmental-contaminants-food/lead-food-and-foodwares#:~:text=In%20addition%2C%20the%20FDA%20has,parts%20per%20billion%20(ppb) (linking to an Elemental Analysis Manual for Inductively Coupled Plasma-Mass Spectrometric Determination)

53.     Based on the instructions to use a single tampon for a maximum of 8 hours, consumers will use a minimum of three tampons in a 24-hour period.

54.     Most consumers of Defendant's Products, however, use an average of more than three tampons in a 24-hour period.

55.     According to Defendant's ubykotex.com website, "never go longer than 8 hours (preferably 4-8) without changing your product, for reasons of odor, hygiene, and, especially with tampons, health."

56.     According to the use instructions, consumers will use an average of between three to six Products in a 24-hour period.

### ***Ordinary Use of Defendant's Products Exposes Consumers to a Substantial Amount of Lead***

57.     The independent scientific testing commissioned by Plaintiff's counsel, described above, demonstrates that each size of the Products contains lead, as follows:

| TAMPON TYPE TESTED | AVERAGE LEAD PER TAMPON | AVERAGE LEAD PER 3 TAMPONS | AVERAGE LEAD PER 6 TAMPONS |
|---|---|---|---|
| U by KOTEX Click® Regular | .309 mcg lead | .927 mcg lead | 1.854 mcg lead |
| U by KOTEX Click® Super | .376 mcg lead | 1.128 mcg lead | 2.256 mcg lead |
| U by KOTEX Click® Super Plus | .457 mcg lead | 1.371 mcg lead | 2.742 mcg lead |

58.     According to this independent scientific testing, ordinary and expected use of any size of the Products exposes consumers to a substantial amount of lead.

59.     The amount of lead in the Products is material to reasonable consumers because it poses a potential health risk and affects a reasonable consumer's purchasing decision.

### *Organic Cotton Tampons Do Not Contain Detectible Levels of Lead*

60.     Based on the independent scientific testing and analysis described above, other tampons that are not manufactured by Defendant contain such a small amount of lead (if any) that the lead is below the limit of detection.

61.     According to independent scientific testing and analysis, L. brand tampons and Tampax pure cotton tampons, which are advertised as containing an 100% organic cotton core, contain such a small amount of lead (if any) that the lead is below the limit of detection.

62.     In addition, independent scientific testing and analysis of certain other brands of tampons, which are advertised as containing 100% organic cotton, demonstrates that the tampons contain such a small amount of lead (if any) that the lead is below the limit of detection.

63.     Defendant has the ability to manufacture tampons that do not contain lead.

64.     Defendant willfully or negligently manufactures the Products such that they contain a detectible, substantial amount of lead.

65.     On information and belief, it costs less for Defendant to manufacture the Products containing lead than it would cost for Defendant to manufacture organic cotton tampons without lead.

### *Lead Exposure is Harmful and Dangerous*

66.     Lead affects almost every organ and system in the body and accumulates in the body over time, leading to severe health risks and toxicity, including inhibiting neurological

function, anemia, kidney damage, seizures, and in extreme cases, coma and death.[3]

67.    The lead contained in the Products may be particularly detrimental to consumer health because the Products are not consumed orally, but instead are intended to be inserted vaginally where the lead can be directly absorbed into the blood stream.

68.    In other words, there is no "first-pass metabolism and detoxification via the liver" but instead the lead in the Products may "directly enter systemic circulation."[4]

69.    A study addressing Medication Routes of Administration states that the "first pass effect" for oral administration refers to the "drug metabolism whereby the drug concentration is significantly diminished before it reaches the systemic circulation, often due to the metabolism in the liver."[5]

70.    By contrast, vaginal administration bypasses the system of veins that transport blood from the digestive tract to the liver.[6]

71.    Vaginal administration directly accesses the networks of blood vessels that surround vital organs, including the pelvic organs.[7]

72.    Vaginal walls are permeable and allow for efficient absorption, including in

---

[3] Wani AL, et al., Lead toxicity: a review, INTERDISCIP TOXICOL. (June 2015), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4961898.

[4] Environmental International 190 (2024) 108849, Tampons as a source of exposure to metal(loid)s, Jenni A. Shearson, et al. (citing Kim and De Jesus, 2022) (hereinafter, "Environmental International").

[5] Kim J, De Jesus O, Medication Routes of Administration, EUROPE PMC (March 2021), available at https://europepmc.org/article/NBK/nbk568677.

[6] *Id.*

[7] *Id*.

absorption tests of certain medications.[8]

73.     Toxins can pass through the vaginal epithelium and enter systemic circulation.[9]

74.     Accordingly, if the lead in the Products passes through the vaginal epithelium, it is not diminished or filtered by metabolic function, but rather can be absorbed directly into the bloodstream.

75.     According to the World Health Organization, "[e]xposure to lead can affect multiple body systems and is particularly harmful to young children and women of child-bearing age."[10]

C.  **Plaintiff and Class members Purchased the Products to Their Detriment**

76.     Plaintiff and consumers purchased the Products to their detriment.

77.     The Products purchased by Plaintiff and consumers bear Defendant's uniform, misleading Representations.

78.     The composition of the Products purchased by Plaintiff and consumers was uniform.

79.     Defendant intentionally advertised, labeled, and sold the Products with the Representations.

80.      Defendant knew or should have known that reasonable consumers would consider the Representations material in deciding to purchase the Products, including that a reasonable

---

[8] P. van der Biji, et al., Comparative permeability of human vaginal and buccal mucosa to water, Eur J Oral Sci. (Dec. 1997), available at https://pubmed.ncbi.nlm.nih.gov/9469607/; *see also* Environmental International (citing (Patel et al., 1983; Vorontsova et al., 2022).
[9] Environmental International (discussing the toxic shock syndrome outbreak of the 1980s) (citations omitted).
[10] https://www.who.int/news-room/fact-sheets/detail/lead-poisoning-and-health

person would attach importance to the Representations in determining whether to purchase the Products.

81.     Defendant failed to disclose that the Products contain lead with the intent to defraud consumers in that, among other things, consumers would be less likely to purchase the Products if they knew the truth.

82.     Plaintiff and Class members suffered damage in purchasing the Products, including based on the purchase price paid for the Products.

83.     Plaintiff would like to purchase the Products in the future, however, if the Products did not contain lead.

## PLAINTIFF'S FACTUAL ALLEGATIONS

84.     Plaintiff Stephanie Foster is a citizen of Chicago who has purchased the Products numerous times during the Class Period (defined below).

85.     The advertising and labeling on the packages of the Products purchased by Plaintiff, including the Representations, is typical of the advertising, labeling and representation of the Products purchased by members of the Class (defined below).

86.     The price paid by Plaintiff for the Products is typical of the price paid by members of the Class.

87.     Plaintiff purchased the Products from Target and CVS stores located in Chicago, Illinois.

88.     Plaintiff purchased the Products, including in the following sizes: super and super plus.

89.     Plaintiff purchased the Products for personal use.

90.     At the time of purchase, Plaintiff viewed the label box images, including the Representations.

91.     At the time of purchase, Plaintiff did not know, and had no reason to know, that the Products contain lead.

92.     Acting reasonably under the circumstances, Plaintiff relied on the reputation of the Products and the Representations and believed that the Products would be free from potentially harmful ingredients or elements (such as lead).

93.     Unbeknownst to Plaintiff at the time of purchase, the Products contain lead.

94.     Defendant failed to disclose that the Products contain lead.

95.     Had Plaintiff known at the time of purchase that the Products contain lead, Plaintiff would not have purchased the Products.

96.     Defendant continues to sell the misbranded Products.

97.     Plaintiff would like to purchase the Products in the future if the Products did not contain lead.

98.     Plaintiff continues to suffer harm because she is not able to rely on the labeling and advertising of the Products for their truth, and thus is unable to determine whether she can purchase the Products in the future.

99.     Unless Defendant is enjoined from failing to misrepresent the Products in the future, Plaintiff and consumers will not be able to reasonably determine whether the lead in the Products has been addressed and remedied.

100.    Accordingly, Plaintiff's legal remedies are inadequate to prevent future injuries.

## CLASS ACTION DEFINITION AND ALLEGATIONS

101. **Class Definition:** Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of herself, on behalf of all others similarly situated, and as a member of the Classes defined as follows (collectively, the "Class"):

> **Nationwide Class**: All citizens of the United States, excluding citizens of California, who, within the applicable statute of limitations period, purchased Defendant's Products for personal use and who do not claim any personal injury from using the Products (the "Nationwide Class");

> **Multi-State Consumer Protection Class**: All citizens who, within the applicable statute of limitations period, purchased Defendant's Products for personal use within the following states: District of Columbia (D.C. Code §§ 28-3312 *et seq*.); Florida (Fla. Stat. §§ 501.201, *et seq*.); Illinois (815 ICLS §§ 505/1, *et seq*.); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq*.); Michigan (Mich. Comp. Laws §§ 445.901, *et seq*.); Minnesota (Minn. Stat. §§ 325F.67, *et seq*.); New Jersey (N.J. Stat. §§ 56:8- 1, *et seq*.); New York (N.Y. Gen. Bus. Law §§ 349, *et seq*.); and Washington (Wash. Rev. Code §§ 19.86.010, *et seq*.)[11], and who do not claim any personal injury from using the Products (the "Multi-State Consumer Protection Class"); and

> **Illinois Subclass:** All citizens of Illinois who, within the three years prior to the filing of the initial Complaint, purchased Defendant's Products in the State of Illinois for personal use and who do not claim any personal injury from using the Products (the "Illinois Subclass").

102. Members of the Class described are referred to as "Class members".

---

[11] The consumer protection and consumer fraud laws of each of the states that comprise the Multi-State Consumer Protection Class are similar to the consumer fraud law of the State of Illinois, as set forth herein. *See e.g.* D.C. Code §§ 28-3312, *et seq*.; Fla. Stat. §§ 501.201, *et seq*.; 815 ICLS §§ 505/1, *et seq*.; Mass. Gen. Laws §§ 93A, *et seq*.; Mich. Comp. Laws §§ 445.901, *et seq*.; Minn. Stat. §§ 325F.67, *et seq*.; N.J. Stat. §§ 56:8- 1, *et seq*.; N.Y. Gen. Bus. Law §§ 349, *et seq*.; Wash. Rev. Code §§ 19.86.010, *et seq. See also Mullins v. Direct Digital, LLC,* No. 13-cv-1829, 2014 WL 5461903 (N.D. Ill. Sept. 30, 2014)*, aff'd,* 795 F.3d 654 (7th Cir. 2015).

103.    Excluded from the Class is: (1) Defendant, its assigns, successors, and legal representatives; (ii) any entities in which Defendant has a controlling interest; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; (iv) all persons presently in bankruptcy proceedings or who obtained a bankruptcy discharge in the last three years; and (v) any judicial officer presiding over this matter and person within the third degree of consanguinity to such judicial officer.

104.    Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate sub-classes, in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

105.    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

106.    **Numerosity – Federal Rule of Civil Procedure 23(a)(1):**  The exact size of the Class is unknown and not available to the Plaintiff at this time, but it is clear that individual joinder is impracticable.  On information and belief, Class members number in the hundreds of thousands or millions. The Products are marketed and sold throughout the United States and the State of Illinois.

107.    **Common Questions Predominate – Federal Rule of Civil Procedure 23(a)(2):**  Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Such common questions of law or fact include, *inter alia*:

- Whether the Product Representations are false, misleading and/or deceptive;

- Whether Defendant engaged in unlawful, unfair or deceptive business practices by manufacturing, labeling, advertising and/or selling the Products;

- Whether Defendant violated consumer protection laws;

- Whether Defendant's conduct was and is negligent;

- Whether Plaintiff and the Class are entitled to equitable and/or injunctive relief;

- Whether Plaintiff and the Class have sustained damage as a result of Defendant's unlawful conduct;

- The proper measure of damages sustained by Plaintiff and the Class; and

- Whether Defendant was unjustly enriched.

108. Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, individually and on behalf of the other Class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale in comparison, in both quality and quantity, to the numerous common questions that dominate this action.

109. **Typicality – Federal Rule of Civil Procedure 23(a)(3):** Plaintiff's claims are typical of the claims of the members of the Class she seeks to represent because Plaintiff, like the Class members, purchased Defendant's misbranded Products. Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiff and the Class sustained similar injuries arising out of Defendant's conduct. Plaintiff's and Class members' claims arise from the same practices and course of conduct and are based on the same legal theories.

110. **Adequacy – Federal Rule of Civil Procedure 23(a)(4):** Plaintiff is an adequate representative of the Class she seeks to represent because her interests do not conflict with the

interests of the members of the Class Plaintiff seeks to represent. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer protection litigation.

111. **Superiority and Substantial Benefit – Federal Rule of Civil Procedure 23(b)(3):** A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

    a. The claims presented in this case predominate over any questions of law or fact, if any exists at all, affecting any individual member of the Class;

    b. Absent a Class, the members of the Class will continue to suffer damage and Defendant's unlawful conduct will continue without remedy while Defendant profits from and enjoys its ill-gotten gains;

    c. Given the size of individual Class members' claims, few, if any, members could afford to or would seek legal redress individually for the wrongs Defendant committed against them, and absent members have no substantial interest in individually controlling the prosecution of individual actions;

    d. When the liability of Defendant has been adjudicated, claims of all members of the Class can be administered efficiently and/or determined uniformly by the Court; and

e.      This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and members of the Class can seek redress for the harm caused to them by Defendant.

112.    Because Plaintiff seeks relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendant.

113.    The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Federal Rule of Civil Procedure 23(b)(2) are met as Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the Class members, thereby making appropriate final injunctive relief and equitable relief, as described below, with respect to the Class as a whole.

114.    The prerequisites to maintaining a class action pursuant to Rule 23, *et seq.* are also met as questions of law or fact common to Class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

115.    Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

**CAUSES OF ACTION**

**COUNT I**
**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act:**
**(i) Unfair and Deceptive Acts and Practices**
**(ii) Misrepresentation/Omission**
**815 ILCS 505/1, *et seq.***
**(*for Plaintiff and the Illinois Subclass*)**

116.     Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

117.     Plaintiff brings this cause of action on her own behalf and on behalf of the Illinois Subclass.

118.     The purpose of the Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq*. ("ICFA"), is to protect consumers against fraud and unfair and deceptive acts in the conduct of commerce.

119.     Defendant's Products constitute "merchandise" within the meaning of 815 ILCS 505/1(b).

120.     Defendant is a "person" within the meaning of 815 ILCS 505/1(c).

121.     Defendant's activities continue a "sale" within the meaning of 815 ILCS 505/1(d).

122.     The ICFA prohibits, in pertinent part: "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact."

123.     Defendant's conduct violates the ICFA because it constitutes (i) an unfair and/or deceptive act and practice; and (ii) misrepresentation, or the concealment, suppression or omission of any material fact.

### *Unfair and Deceptive Act and Practice*

124.    Defendant's conduct, including the deception, fraud, false pretense, misrepresentation, concealment, suppression and/or omission of material facts alleged herein, occurred in connection with Defendant's conduct of trade or commerce in Illinois and constitutes an unfair and deceptive act and practice.

125.    Defendant engaged in deception, fraud, false pretense and/or misrepresentation in its manufacture and sale of the Products, including by making the misleading Representations described herein and failing to disclose that the Products contain lead.

126.    Defendant intended that Plaintiff and Class members rely on the Representations and the concealment, suppression and/or omission of the material fact concerning the lead in the Products.

127.    Defendant's conduct, described above, was and is likely to mislead and Defendant intended to mislead and deceive reasonable consumers.

128.    Plaintiff and the Class were misled and deceived.

129.    Defendant is aware that the Representations it has made about the Products and failure to disclose that the Products contain lead were and continue to be misleading.

130.    Defendant's unfair and deceptive acts or practices were the foreseeable and actual cause of Plaintiff and Class members suffering actual damage.

131.    Plaintiff and the Class suffered injury in fact and lost money as a result of their purchase of the Products due to Defendant's unlawful, unfair, and deceptive conduct.

132.    Plaintiff and the Class were injured through their purchase of the Products, including based on the purchase price of the misrepresented Products.

133.    Plaintiff seeks equitable and injunctive relief to stop Defendant's misconduct, as

complained of herein, and seeks restitution of the amounts Defendant acquired through the unfair, unlawful, and fraudulent business practices described herein, including based on a refund of the purchase price paid for the Products.

### *Misrepresentation and Omission*

134.    Defendant has violated the ICFA by "the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact."

135.    Defendant intentionally makes the label Representations but fails to disclose that the Products contain lead.

136.    Defendant's conduct is materially misleading.

137.    Plaintiff and reasonable consumers do not know, and have no reason to believe, that the Products contain lead.

138.    Defendant's Representations and omission are intentionally designed to mislead reasonable consumers.

139.    Plaintiff and reasonable consumers were in fact misled and deceived.

140.    Plaintiff and Class members purchased the Products and were harmed based on, among other things, the price paid for a Product that is misrepresented.

141.    Plaintiff and the Class were injured through their purchase of the Products, including based on the purchase price of the misrepresented Products.

142.    Plaintiff seeks equitable and injunctive relief to stop Defendant's misconduct, as complained of herein, and seeks restitution of the amounts Defendant acquired based on the misrepresentations and omission described herein, including based on a refund of the purchase price paid for the Products.

## COUNT II

**Violation of State Consumer Fraud/Consumer Protection Acts**
***(for Plaintiff and the Multi-State Consumer Protection Class)***

143.     Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

144.     Plaintiff brings this cause of action on her own behalf and on behalf of the Multi-State Consumer Protection Class.

145.     The Consumer Fraud Acts and Consumer Protection Statutes of the States comprising the Multi-State Consumer Protection Class (the "Statutes") are substantially similar and prohibit the use of unfair and/or deceptive business acts and practices in the conduct of commerce.

146.     Defendant's actions, as complained of herein, constitute unfair, unlawful, deceptive, or fraudulent acts or practices in violation of the Statutes of each of the States comprising the Multi-State Consumer Protection Class.

147.     Defendant's uniform, misleading and deceptive Representations and failure to disclose that the Products contain lead to Plaintiff and proposed Class members were, and are, unfair and deceptive acts and practices under the Statutes.

148.     Defendant intended that consumer rely on the Representations and omission, as set forth herein.

149.     Defendant made the Representations and omission intentionally, and with reckless disregard for the truth.

150.     It was and is likely that consumers would rely on Defendant's express label Representations.

151.     Consumers reasonably relied on Defendant's Representations and were misled.

152.     Consumers did not know and could not be expected to know that the Products contain lead, as set forth herein, including because Defendant intentionally or negligently failed to disclose this fact.

153.     Plaintiff and the proposed Class members were proximately injured by Defendant's unlawful conduct, including because they would not have purchased the Products if they had known the truth.

154.     Plaintiff and the proposed Class members are entitled to damages, restitution, disgorgement, and/or such orders or judgments as may be necessary to restore to any person in interest, any money which may have been acquired by means of such unfair and deceptive acts and practices, and to the relief set forth below.

### COUNT III

**Negligent Misrepresentation**
***(for Plaintiff and the Nationwide Class or, in the alternative, the Illinois Subclass)***

155.     Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

156.     Plaintiff brings this cause of action on behalf of herself and the Nationwide Class or the Illinois Subclass

157.     As described herein, Defendant made the uniform Representations on the Product labels, but failed to disclose the material fact that the Products contain lead.

158.     Defendant had a duty to accurately and truthfully represent and label the Products.

159.     Defendant supplies information to consumers concerning its trusted, feminine care Products.

160.     Among other things, on Defendant's ubykotex.com website, Defendant states that it "put[s] your comfort and wellbeing first. That's why every pad, tampon and liner contains safe materials that you can trust and feel good about."[12]

161.     In making the Representations, Defendant knew that the Representations were misleading based on its failure to disclose the lead contained the Products.

162.     At an absolute minimum, Defendant negligently misrepresented and/or omitted material facts about the Products.

163.     Defendant intended to induce and actually induced Plaintiff and Class members to purchase the Products.

164.     Plaintiff and Class members reasonably and justifiably relied on Defendant's Representations, and the absence of any lead disclosure, in purchasing the Products.

165.     Plaintiff and Class members would not have purchased the Products if they had known the truth.

166.     As a direct and proximate cause of Defendant's misrepresentations and omission, Plaintiff and the Class members have suffered damages in an amount to be proved at trial.

## COUNT IV
## Unjust Enrichment
### (for Plaintiff and the Nationwide Class or, in the alternative, the Illinois Subclass)

167.     Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

168.     Plaintiff brings this cause of action on behalf of herself and the Nationwide Class or the Illinois Subclass.

---

[12] *See* www.ubykotex.com, last visited August 14, 2025.

169. As set forth herein, Defendant made the Representations and failed to disclose the lead in the Products in order to increase sales of the Products and to enrich itself.

170. Defendant was enriched at the detriment of Plaintiff and Class members, who spent money to purchase the Products that they would not have spent had they known the truth.

171. Plaintiff and the Class conferred substantial benefits on Defendant through the purchase of the Products.

172. Defendant knowingly and willingly accepted and enjoyed these benefits.

173. Defendant's acceptance and retention of these benefits violates fundamental principles of equity and good conscience.

174. Defendant obtained these benefits based on the misleading labeling of the Products.

175. As a direct and proximate result of Defendant's misconduct described herein, Plaintiff and members of the Class have suffered damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff individually and on behalf of the Class, prays for an Order as follows:

A. Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff as representative of the Class, and appointing her counsel as class counsel;

B. Declaring that Defendant's conduct violates the statutes referenced herein;

C. Awarding all actual, general, special, incidental, punitive, statutory, and consequential damages to which Plaintiff and Class members are entitled;

D. Awarding pre-judgment and post-judgment interest on such monetary relief;

E.    Granting appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendant to accurately and truthfully advertise, label and sell the Products;

F.    Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees; and

G.    Awarding such other and further relief as equity and justice may require.

### JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully Submitted,

**STEPHANIE FOSTER**, individually and on behalf of all others similarly situated,

Dated: August 14, 2025                    By: */s/ Michael Aschenbrener*
                                               One of Plaintiff's Attorneys

Michael Aschenbrener (6292306)
Email: masch@kamberlaw.com
KamberLaw, LLC
448 N. LaSalle Drive
Chicago, IL 60654
Tel: 212-920-3072
Fax: 212-202-6364
Firm no. 62824

Naomi B. Spector (CA 222573)
Email: nspector@kamberlaw.com
KamberLaw LLP
3451 Via Montebello, Suite 192-212
Carlsbad, CA 92009
Tel: 310-400-1053
Fax: 212-202-6364